1

2
## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

3

4 | Selva Kumar,

Case No. 2:24-cv-02256-CDS-EJY

5 |                    Plaintiff

**Order Granting Defendant's
Motion to Compel Arbitration**

6 | v.

7 | Tata Consultancy Services Limited,

[ECF No. 18]

8 |                    Defendant

9

10        Plaintiff Selva Kumar brings this suit against defendant Tata Consultancy Services

11 Limited alleging claims of (1) violation of the WARN Act; (2) discrimination on the basis of his

12 age; and (3) violation of the Older Workers Benefit Protection Act (OWBPA). *See* First am.

13 compl., ECF No. 13. Tata Consultancy filed a motion to compel arbitration and stay the case

14 pending the completion of arbitration. *See* Mot., ECF No. 18. The motion is fully briefed. *See*

15 Resp., ECF No. 21; Reply, ECF No. 24. For the following reasons, I grant the motion to compel

16 arbitration.

17 **I.        Legal standard**

18        "There is a strong presumption in favor of arbitrating a dispute where a valid and

19 enforceable arbitration agreement exists between the parties." *SR Constr., Inc. v. Peek Bros. Constr.,*

20 *Inc.*, 510 P.3d 794, 798 (Nev. 2022) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643,

21 650 (1986); *Int'l Ass'n of Firefighters, Local No. 1285 v. City of Las Vegas*, 929 P.2d 954, 957 (Nev. 1996)).

22 "Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute

23 in favor of arbitration." *Local No. 1285*, 929 P.2d at 957. "Nevada has a 'fundamental policy favoring

24 the enforceability of arbitration agreements,' and [courts] 'liberally construe arbitration clauses

25 in favor of granting arbitration.'" *Uber Techs., Inc. v. Royz*, 517 P.3d 905, 908 (Nev. 2022) (quoting

26 *Tallman v. Eighth Judicial Dist. Court*, 359 P.3d 113, 118–19 (Nev. 2015)).

"By its terms, the [Federal Arbitration] Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho. Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* (citing 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999); *Rep. of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991)); *see also Ashbey v. Archstone Prop. Mgmt. Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (stating that the party seeking to compel arbitration has the burden to show both elements) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). If the answer to both inquiries is yes, then the court must enforce the arbitration agreement's terms. *Id.* Courts are guided by a "presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

## II.    Discussion

The arbitration agreement at issue here is three pages and is titled "mutual agreement to arbitrate claims." Arb. agreement, Def.'s Ex. 1, ECF No. 18-2. In relevant part, the agreement includes the following:

> [t]he only claims that are arbitrable are those disputes that may be resolved under applicable federal, state or local law. Arbitrable claims include, but are not limited to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, physical or mental disability or handicap, or medical condition); claims for benefits (except claims under an employee benefit or pension plan that either (1) specifies that its claims procedure shall culminate in an arbitration procedure different from this one, or (2) is underwritten by a commercial insurer which decides claims); and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded in the section of this Agreement entitled 'Claims Not Covered By The Agreement.'

1  ECF No. 18-2 at 2. As explained above, when the FAA governs an agreement, the court's role is

2  limited to determining (1) whether a valid agreement to arbitrate exists and, if so, (2) whether

3  the agreement encompasses the dispute at issue. *Chiron Corp.*, 207 F.3d at 1130. As to the

4  arbitration procedures, this agreement provides that it "will be conducted under the

5  Employment Arbitration Rules & Procedures of the American Arbitration Association ('AAA

6  Rules') then in effect." ECF No. 18-2 at 3. Kumar does not dispute the scope of the arbitration

7  agreement or whether it encompasses his claims, therefore the question before the court is

8  whether the parties entered into a valid arbitration agreement.

9       **A.  The arbitration agreement between the parties is valid.**

10      Tata Consultancy argues, as evidenced by the signed arbitration agreement, that Kumar

11  entered into a binding arbitration agreement with them and that agreement covers the entirety

12  of his allegations. ECF No. 18 at 2. In opposition, Kumar argues that Tata Consultancy has

13  attached a "rogue" document because Kumar did not sign the agreement, and that there is no

14  handwritten signature, so the typewritten signature provided by the defendant "casts [a] dark

15  shadow on authenticity and veracity." ECF No. 21 at 2. Kumar also argues that even if the court

16  considers the arbitration clause to be valid, it should be declared unenforceable because it is

17  procedurally and substantively unconscionable. *Id.* at 3. I address each argument.

18      *1.  There is no genuine issue of material fact as to whether the plaintiff
            signed the agreement.*
19

20      When analyzing a motion to compel arbitration, I employ a similar standard to the

21  summary judgment standard applied under the Federal Rule of Civil Procedure 56. *Gonzalez v.*

22  *Comenity Bank*, 2019 U.S. Dist. LEXIS 188514, at * 4 (E.D. Cal. Oct. 30, 2019). Therefore, the

23  moving party must show there is no genuine issue of material fact and is entitled to an order

24  compelling arbitration as a matter of law. If I find a genuine issue of material fact exists, I must

25  summarily proceed to a bench trial on the issue. 9 U.S.C. § 4; *see also Mayorga v. Ronaldo*, 491 F.

26  Supp. 3d 840, 855 (D. Nev. 2020).

1    To support its motion to compel, Tata Consultancy provides a copy of Kumar's signed

2  arbitration agreement. Arb. Agreement, Def.'s Ex. 1, ECF No. 18-2.[1] Tata Consultancy also

3  provides a declaration from Jeevak Sharma, Head of Human Resources Compliance and

4  Employee Relations, describing their onboarding process, and a statement declaring that on

5  April 16, 2018, the plaintiff electronically signed the Mutual Agreement to Arbitrate Disputes. *See*

6  Sharma decl., Def.'s Ex. 2, ECF No. 18-3.

7    In response, Kumar argues that he did not sign the arbitration agreement and that there

8  was never any discussion of the agreement to arbitrate. Resp., ECF No. 21. In support of his

9  argument, Kumar asserts that Tata Consultancy previously filed a similar motion (Mot. to

10 Compel Arb., ECF No. 11) that contained an agreement Kumar never signed and "was dated long

11 before Kumar ever joined the company as an employee." *Id.* at 3. Kumar claims the inclusion of an

12 erroneous agreement with the prior motion proves Tata Consultancy is trying to "hoodwink the

13 court with a rogue document." *Id.* Kumar further argues that he is meticulous, pointing to the

14 three pages of the job offer he signed. Pl.'s Ex. A, ECF No. 21-1. Kumar essentially asserts that he

15 did not sign the arbitration agreement. ECF No. 21. at 2–3.

16    In reply, Tata Consultancy asserts that "[t]here is no genuine dispute that Plaintiff

17 executed his Agreement to Arbitrate." ECF No. 24. As explained in Sharma's declaration, Tata

18 Consultancy uses "a secure, internal onboarding website called 'iBegin' for new hires to

19 electronically receive, review, and complete paperwork as required as a condition of their

20 employment with Defendant." *Id.* at 4. "[O]nce a candidate submits their acceptance of an offer

21 of employment," Tata Consultancy then "sends the candidate a system-generated email with a

22 link and randomly generated password that the candidate is directed to use for logging into

23 iBegin." *Id.* Once candidates create their own confidential passwords and review the read-only

24 documents, iBegin directs candidates to click through documents, and the employees are

25 required to review and electronically sign the documents before commencing employment with

26

---

[1] I may examine evidence outside the pleadings on a motion to compel arbitration. *Whipple v. Whipple*, 2025 U.S. Dist. LEXIS 59265, at *6 (D. Nev. Mar. 29, 2025) (citing *Manuwal v. BMW of N.Am. LLC*, 484 F. Supp. 3d 862, 864 n.1 (C.D. Cal. 2020)).

Tata Consultancy. ECF No. 24 at 4. Among these documents is the agreement to arbitrate. *Id.* at 4; ECF No. 18-3 at 15–21.

Kumar has not met his burden in demonstrating that a genuine issue of material fact exists as to whether he did in fact sign the arbitration agreement. Although Kumar asserts that he never signed the agreement, this assertion is solely supported by his own declaration. ECF No. 21 at 2. "[A] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Valenzuela v. GK Nev. LLC*, 2024 U.S. Dist. LEXIS 127071, at * 14–15 (D. Nev. June 26, 2024) (quoting *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("this court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."). Although Kumar provides one exhibit containing a hand-signed copy of his employment offer with Tata Consultancy (ECF No. 21-1), this does not create a genuine issue of material fact. Tata Consultancy provides a copy of the acceptance of offer that was signed electronically, which is consistent with the procedures explained by Sharma. *See* ECF No. 24-2. Moreover, the electronic acceptance of offer and the employment offer physically signed by Kumar contain the **same date** as the electronically signed arbitration agreement. *Compare* ECF No. 24-2 at 5 *with* ECF No. 21-1 at 3 *and* ECF No. 18-2 at 4. Further, both of the employment offers provided by Kumar and Tata Consultancy contain the same "EP Refence ID: EP2018RA719382." ECF No. 24-2 at 4, 5; ECF No. 21-1 at 3. The evidence before the court shows there is no genuine issue of material fact that Kumar electronically signed the arbitration agreement. Simply proclaiming that he did not sign the agreement is not enough to create a genuine issue of material fact. *See FTC*, 104 F.3d at 1171 (citations omitted); *see Valenzuela*, 2024 U.S. Dist. LEXIS 127071, at *15 (collecting cases). Additionally, Sharma's declaration that all prospective employees hired by Tata Consultancy use iBegin to electronically review and sign onboarding documents, which includes the arbitration agreement, as evidenced in the form of screenshots of Tata's iBegin onboarding documents, belie Kumar's

claims. *See* Def.'s Ex. 2A, ECF No. 18-3 at 11–18. Even Kumar's exhibit seems to demonstrate he needed to do more after accepting the offer. *See* ECF No. 21-1 at 3 (the offer of employment contains a link and a QR code "to validate the offer letter").

Also, Kumar's referral to the defendant's filing of a prior copy of a different prospective employee's agreement to arbitrate, arguing Tata Consultancy is trying "to hoodwink the court with a rogue document, either deliberately or in error, of course, the answer is in the affirmative because it is the nature of man to repeat a sin than repent of it" is unconvincing. ECF No. 21 at 3. Kumar provides no evidence to corroborate this assertion and Tata's explanation of their error is reasonable. *See* ECF No. 18 at 2; ECF No. 18-3 at ¶ 27. Consequently, Kumar has failed to meet his burden to demonstrate that there is a genuine issue of material fact as to whether he signed the arbitration agreement.

### 2. *The agreement is not unconscionable.*

Kumar argues that even if the court were to find the arbitration clause is valid, the court should declare it unenforceable because it is procedurally and substantively unconscionable. An arbitration agreement is unconscionable only if it is both procedurally and substantively unconscionable. *De Niro v. Arise Virtual Sols. Inc.*, 2024 U.S. Dist. LEXIS 210885, at * 11 (D. Nev. Nov. 20, 2024) (citing *Tough Turtle Turf, LLC v. Scott*, 537 P.3d 883, 885 (Nev. 2023)). An arbitration agreement is procedurally unconscionable if "a party lacks a meaningful opportunity to agree to the . . . terms either because unequal bargaining power, as in an adhesion contraction, or because . . . its effects are not readily ascertainable upon review of the contract." *Tough Turtle Turf*, 537 P.3d at 885. Further, an arbitration agreement is substantively unconscionable if its "terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy." *Id.* "Unconscionability is evaluated on a 'sliding scale,' such that if one type of unconscionability is greater, the other may be lesser." *De Niro*, 2024 U.S. Dist. LEXIS 210885, at * 12 (citing *Tough Turtle Turf*, 537 P.3d at 885). Although the party seeking to enforce an arbitration agreement

1  bears the burden of proving the validity of the agreement, the party opposing arbitration must

2  establish a defense to enforcement—in this case that it is unconscionable. *Id.*

3          As a threshold matter, Tata Consultancy asserts that the plaintiff bears the burden of

4  demonstrating a defense to the arbitration agreement. Specifically, it argues that Kumar's

5  position only addresses procedural unconscionability, and that this agreement did not mislead

6  or conceal any of its terms from Kumar. *See* ECF No. 24 at 7–8. I agree. The arbitration agreement

7  reveals that its terms were clear and does not appear to be any attempt to conceal the terms of

8  arbitration. ECF No. 18-2. The arbitration agreement provides that it will be conducted under

9  the Employment Arbitration Rules & Procedures of the American Arbitration Association

10 ("AAA"). AAA Rules, Def.'s Ex. 3, ECF No. 18-4. Pursuant to the AAA rules, "[t]he arbitrator

11 shall have the power to rule on his or her own jurisdiction" including objections regarding the

12 validity of the arbitration agreement. *See id.* at 18.[2] In *Rent-A-Center, West, Inc. v. Jackson*, the

13 Supreme Court held that parties may agree to arbitrate gateway questions of arbitrability to

14 include whether the agreement is valid. 561 U.S. 63, 68–69 (2010). Here, when reviewing the

15 arbitration agreement that was signed, arbitrability is not included in the "claims not covered by

16 the agreement" section, and the agreement clearly indicates that the AAA rules govern. When an

17 arbitration agreement's delegation clause provides for an arbitrator to have authority to

18 determine whether an arbitration agreement is valid, a court is barred from adjudicating a

19 party's claim of unconscionability. *See Madrigal v. AT&T Wireless Servs.*, 2010 U.S. Dist. LEXIS

20 134347, at * 6–7 (E.D. Cal. Dec. 20, 2010) (citing *Jackson*, 561 U.S. at 72).

21          Here, it is unclear what exactly Kumar claims is unconscionable. Instead, Kumar simply

22 asserts he "did not sign the arbitration agreement, even if he did, it is obvious that he was not

23 aware of doing so as that was not an explicit or affirmative act, rather it was implied." ECF No.

24 21 at 4. There is no explanation regarding any disagreements with the arbitrability delegation

25

26 [2] I take judicial notice of the rules of the AAA as they can be readily determined from a source whose accuracy cannot reasonably be disputed. *See Torres v. Secure Commun. Sys.*, 2020 U.S. Dist. LEXIS 204104, at * 3 (C.D. Cal. July 25, 2020). They can be found here: https://www.adr.org/media/0vrpbnm0/2025_employment_arbitration_rules.pdf

clause nor any particular terms of the arbitration agreement. Relying on *D.R. Horton, Inc. v. Green*, Kumar also attempts to argue that the agreement was unconscionable because he lacked a meaningful opportunity to agree to the terms due to unequal bargaining power. 96 P.3d 1159, 1162 (Nev. 2004). In the entirety of Kumar's response, *D.R. Horton* is the only case that is cited, and I find that Kumar has failed to provide any meaningful analysis explaining the relevance of that case nor how it applies here. *D.R. Horton* provides that a contract clause "is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, **or** because the clause and its effects are not readily ascertainable upon a review of the contract." *D.R. Horton*, 96 P.3d at 1162, overruled on other grounds by *U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32 (Nev. 2018) (emphasis added). As explained above, the terms of the arbitration agreement were readily ascertainable. Kumar fails to explain how he was in an unequal bargaining position than the defendant and how it renders his agreement to arbitrate procedurally unconscionable. He fails to provide argument as to how the agreement is substantively unconscionable. Without any evidence to support Kumar's contentions, the court finds there is none.

Consequently, because there is nothing currently before the court that would allow me to find that the arbitration agreement is procedurally or substantively unconscionable, my inquiry into the validity of this agreement ends. Any other arguments relating to the validity of the arbitration agreement must be resolved by the arbitrator. Defendant's motion to compel arbitration is granted.

**III.    Conclusion**

IT IS HEREBY ORDERED that the defendant's motion to compel arbitration and stay this case **[ECF No. 18] is GRANTED.** The parties must promptly submit this matter to arbitration in accordance with Tata Consultancy Services' Mutual Agreement to Arbitrate Claims (ECF No. 18-2).

1    This matter is now stayed pending the outcome of arbitration, therefore the parties must

2  file a joint status report on July 23, 2026, or within fourteen days of the arbitrator's decision,

3  whichever is sooner.

4    Dated: September 25, 2025

5

6    _____
     Cristina D. Silva
     United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

9